IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action No. |
| v. ) | 19-00215-01-CR-W-RK |
| ) | |
| PATRICK MICHAEL DINGLE, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION TO DENY
## DEFENDANT'S FOURTH MOTION TO DISMISS

Before the Court is Defendant Dingle's Fourth Motion to Dismiss the Indictment. (Doc. No. 55) Defendant moves the Court to dismiss the Indictment against him in its entirety on grounds that the wire fraud statute is limited to property crimes. For the following reasons, Defendant's motion should be denied.

### I. BACKGROUND

On June 26, 2019, a sixteen-count Indictment was returned in the Western District of Missouri charging Defendants Patrick Dingle and Matthew Torgeson. Defendant Dingle is charged with one count of wire fraud conspiracy, in violation of 18 U.S.C. § 1349; nine counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and three counts of money laundering, in violation of 18 U.S.C. § 1957. The Indictment also contains two criminal forfeiture allegations. Defendant filed the instant motion to dismiss. (Doc. Nos. 55, 56) The Government filed suggestions in opposition (Doc. No. 59) and Defendant replied (Doc. No. 66).

### II. LEGAL ANALYSIS

Defendant maintains that the Indictment should be dismissed on grounds that it does not charge a property crime as required by 18 U.S.C. § 1343. Specifically, Defendant argues small

business and veteran-owned business certifications are not property and that any money obtained in the form of payments from the resulting contracts were incidental to the alleged scheme. He, therefore, seeks dismissal of Counts One through Ten (wire fraud counts); Counts Eleven through Thirteen (money laundering counts), because violations of the wire fraud statute are the alleged predicate crimes; Forfeiture Allegation I, based on the wire fraud counts; and Forfeiture Allegation II, based on the money laundering counts.

The federal wire fraud statute, 18 U.S.C. §1343, is "limited in scope to the protection of property rights." *McNally v. United States,* 483 U.S. 350, 360 (1987). The government's "'intangible rights of allocation, exclusion, and control' -- its prerogatives over who should get a benefit and who should not -- do 'not create a property interest.'" *Kelly v. United States*, 140 S. Ct. 1565, 1572 (2020) (quoting *Cleveland v. United States*, 531 U.S. 12, 13 (2000)). This is so because these intangible rights implicate the government's regulatory power rather than "its role 'as property holder.'" *Id*. (quoting *Cleveland*, 531 U.S. at 23-24).

The issuance of licenses alone thus does not implicate a property right. *See Cleveland*, 531 U.S. at 20, 24. Only when the object of obtaining the license is a corresponding loss of money or property does the scheme fall within the scope of the wire fraud statute. *McNally*, 483 U.S. at 360; *Cleveland*, 531 U.S. at 15. "[A] property loss conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme." *Kelly*, 140 S. Ct. at 1573 (2020)(holding scheme to impose traffic gridlock did not violate wire fraud statute because the object of the scheme was to punish the mayor for refusing to endorse the governor's reelection bid rather than to obtain money or property from the federally-funded Port Authority).

2

The Eighth Circuit has held that contracts awarded by the government can be considered property when the contract results in a loss of money. *See United States v. Granberry*, 908 F.2d 278, 280 (8th Cir. 1990). Other jurisdictions have addressed the viability of charges under the wire and mail fraud statutes[1] stemming from allegations of defendants fraudulently obtaining a license or certification in order to compete for set-aside contracts. Examination of these cases and the analysis contained therein is instructive.

The Seventh Circuit addressed a similar argument to that advanced by Defendant here involving contacts geared toward assisting minority- and women-owned businesses. In *United States v. Leahy*, the defendants misrepresented the ownership structure of businesses to obtain certifications that allowed the businesses to win lucrative contracts to which they would not have otherwise been entitled. 464 F.3d 773, 780 (7th Cir. 2006). The defendants challenged their wire and mail fraud convictions, arguing that the city merely lost a regulatory interest which was an intangible right rather than property. *Id*. at 787. The Court disagreed, reasoning "[t]he certifications were necessary steps, but they were not the object of the long-ranging fraud. That object was money, plain and simple, taken under false pretenses from the city in its role as a purchaser of services." *Id*. at 788.

The Third Circuit reached the same conclusion in *United States v. Tulio*, 263 Fed. Appx. 258 (3d Cir. 2008). In *Tulio*, a contractor submitted bids for construction contracts with the

---

[1] "The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses." *Carpenter v. United States*, 484 U.S. 19, 25 (1987). *See also United States v. Redzic*, 627 F.3d 683, 687 (8th Cir. 2010).

3

Southeastern Pennsylvania Transportation Authority ("SEPTA") reserved for disadvantaged businesses and, in doing so, represented that work would be subcontracted to a disadvantaged business. *Id*. at 260. The contractor did not subcontract out the work but, instead, submitted false "business utilization reports, invoices, and proof of payments (including altered checks)" to SEPTA to fraudulently show that he had. *Id*. In affirming jury instructions that permitted the jury to consider whether the object of the fraud was money or property, the Court found SEPTA was deprived of its property rights since it paid for construction services performed by a disadvantaged business that it did not receive. *Id*. at 262.

Similarly, the Fourth Circuit affirmed a wire fraud conviction based on a contractor's false representation that subcontract work would be performed by disadvantaged businesses. *United States v. Bunn*, 26 Fed. Appx. 139, 142-43 (4th Cir. 2001). On appeal, the defendants argued that because the Department of Highways "obtained the benefit of its bargain -- i.e., the subcontract work was performed satisfactorily" that the only loss was "deprivation of the 'aspirational goal' of attaining a certain level of [disadvantaged business] participation." *Id*. at 142. The Court disagreed, identifying the property interest not as the goal of disadvantaged business participation but as the money used on the construction. *Id*. at 142-43 ("Appellants obtained money to which they were otherwise not entitled by falsely representing that subcontract work would be performed by [disadvantaged businesses]. Nothing more is required.").

Turning to the instant case, the Indictment alleges, in relevant part:

<u>COUNT ONE</u>

1. From in or about June 2009 until in or about March 2018, in the Western District of Missouri and elsewhere, the defendants PATRICK MICHAEL

4

   DINGLE, MATTHEW L. TORGESON, and Matthew C. McPherson and others known and unknown to the Grand Jury, did knowingly conspire with each other to devise and participate in a scheme to defraud the United States, and <u>to obtain money and property from the United States, namely payments on contracts</u> by means of materially false or fraudulent pretenses, representations, and promises, and the use of interstate wire communications, in violation of Title 18, United States Code, Section 1343.
  2. The essence of the conspiracy and scheme was to operate companies with straw owners who qualified as socially and economically disadvantaged individuals or service disabled veterans, but who did not actually control the companies. The conspirators fraudulently obtained small business program certifications and veteran-owned business certifications as to the status of the companies <u>and used those certifications to obtain approximately $346 million in federal contract payments to which they were not entitled. Through the conspiracy and scheme, the conspirators enriched themselves</u>, undermined the small business programs, and deprived honest small businesses of opportunities for work.

. . .

### COUNTS TWO – TEN

 Paragraphs 1 through 51 are incorporated as though fully set forth herein.

 52. On or about the dates listed below, in the Western District of Missouri and elsewhere, defendants DINGLE, TORGESON, and McPherson and others known to the Grand Jury, for the purpose of executing and carrying out the <u>above scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises</u>, and attempting to do so, caused wire communications in electronic fund transfers to be transmitted in interstate commerce . . .

(Doc. No. 1)(emphasis added) Two hundred and one contracts were obtained through the alleged scheme. (Doc. No. 1, at ¶¶ 36, 41) The Indictment contains allegations specifically detailing the resulting amounts received. (Doc. No. 1, at ¶¶ 36, 37, 41, 42, 44) Counts Two through Ten identify nine separate transactions in 2016 and 2017 in which the federal government wired amounts ranging between $57,640.00 and approximately $1.6 million as payments on the contracts. (Doc. No. 1, at ¶ 52)

5

Despite Defendant's contention otherwise, the scheme alleged here involved more than a regulatory crime of defrauding the Government out of licenses that, in turn, deprived honest small businesses of opportunities for work. The licenses were just the means to an end. Unlike the facts of *Kelly*, *supra*, the Indictment in this case makes clear that the true object of the alleged scheme was to use the licenses to obtain "approximately $346 million in federal contract payments" to which the defendants were not entitled. (Doc. No. 1, at ¶ 2) As reasoned by the Fourth and Seventh Circuits, the fact that the federal government received satisfactory work under the contracts is of no consequence. The alleged intent was to obtain money or property from the government by fraud. *See United States v. Jefferson*, 652 F.3d 927, 930 (8th Cir. 2011). The Court thus finds that the Indictment sufficiently alleges a property crime and that the wire fraud counts and accompanying money laundering counts and forfeiture allegations should not be dismissed.

## III. CONCLUSION

Based on the above, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's Fourth Motion to Dismiss the Indictment.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this Report and Recommendation to file and serve specific objections, unless an extension of time for good cause is obtained.

Date: February 3, 2021             /s/ *Jill A. Morris*
                                   JILL A. MORRIS
                                   UNITED STATES MAGISTRATE JUDGE